IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>JUSTIN M. BRAY,<br>Defendant. | Case No. 18–CR–40035–JPG–1 |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Justin M. Bray's Motion for Compassionate Release. (ECF No. 53). For the reasons below, the Court **DENIES** Bray's Motion.

I. **PROCEDURAL & FACTUAL HISTORY**

A. **The Conviction**

In 2018, a federal grand jury in this District indicted Bray for (1) possessing a firearm as a felon and (2) escaping from pretrial detention at White County Jail. (Superseding Indictment 1–2, ECF No. 24). He pleaded guilty the next year, and the Court sentenced him to a 41-month term of imprisonment. (Judgment 1–2, ECF No. 53). He is currently incarcerated at the Randolph County Jail in Chester, Illinois. (Bray's Mot. for Compassionate Release at Ex. A). His projected release date is July 1, 2023. *See Find an Inmate*, Federal Bureau of Prisons [hereinafter "BOP"] (last visited Feb. 12, 2021).[1]

B. **The Presentence Investigation Report**

Before sentencing, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about Bray's background and the nature and circumstances of the offense. (PSR 1, ECF No. 46).

---

[1] *Available at* https://www.bop.gov/inmateloc/.

According to the PSR, after walking into a convenience store in 2018, "Bray was arrested on an outstanding felony warrant when officers discovered a black handgun in a holster on Bray's right hip. Bray resisted arrest and refused to follow the officer's verbal commands but was eventually subdued." (*Id.* at 3).

A month later, while in pretrial detention at the White County Jail, "Bray and two other inmates . . . escap[ed] through a hole created in the external wall of the jail." (*Id.* at 4). When he "was subsequently spotted by law enforcement" Bray "entered a nearby river, where he eluded law enforcement for several hours. (*Id.*). Bray was later seen walking in an oil field, where he entered an oil tank on a semi-truck. Bray had to be extricated from the tank by law enforcement as there was no exit point from inside the tank." (*Id.*). His escape caused over $12,000 in property damage. (*Id.*).

Before committing these offenses, Bray pleaded guilty to at least three other crimes, including (1) disorderly conduct when law enforcement observed him "punch another male subject in the face," (2) two separate charges for unlawful possession of methamphetamine (for one, he was also found with 39 rounds of ammunition), and (3) theft after he stole $1,000 in tree-trimming equipment. (*Id.* at 5–7).

### C.  Bray's Motion for Compassionate Release

In 2020, Bray moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (Bray's Mot. for Compassionate Release at 1). He contends that his "health is poorly [sic] due to him having his life subjected to this deadly [COVID-19] virus while in state custody . . . ." (*Id.* at 3). In brief, Bray argues that his risk of experiencing serious complications if he contracts COVID-19 a second time is an *extraordinary and compelling* reason warranting his release. (*Id.*).

## II. LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants considering the COVID-19 pandemic. Even so, the defendant bears the burden of showing *not only* that he faces an increased risk from the virus, *but also* that incarceration is no longer necessary to advance the purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). Bray failed to meet that burden.

### A. Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The § 3553(a) factors are as follows:

(1) the nature and circumstances of the offense and the history and characteristic of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

  (3)  the kinds of sentences available;

  (4)  the kinds of sentence and the sentencing range established for—

    (A)  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

    (B)  in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . . ;

  (5)  any pertinent policy statement—

    (A)  issued by the Sentencing Commission . . . ; and

    (B)  that . . . is in effect on the date the defendant is sentenced[;]

  (6)  the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

  (7)  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

  Similarly, the Bureau of Prisons considers the following nonexclusive factors to determine whether extraordinary and compelling reasons warrant a sentence modification:

- Nature and circumstances of the inmate's offense.
- Criminal history.
- Comments from victims.
- Unresolved detainers.
- Supervised release violations.
- Institutional adjustment.
- Disciplinary infractions.
- Personal history derived from the PSR.

- Length of sentence and amount of time served. . . .

- Inmate's current age.

- Inmate's age at the time of offense and sentencing.

- Inmate's release plans (employment, medical, financial).

- Whether release would minimize the severity of the offense.

Federal Bureau of Prisons, Program Statement No. 5050.50, *Compassionate Release/Reduction in Sentence* (2019).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.'" *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). Rather, it is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is—or is not—appropriate. *See Shannon*, 518 F.3d at 496; *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("[A] district court's discretion in this area—as in all sentencing matters—is broad.").

### B. Exhaustion

Before moving for compassionate release in federal court, criminal defendants must exhaust their administrative remedies with the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). In other words, they must either (1) "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) wait 30 days to lapse "from the receipt of such a request by the warden, whichever is earlier." *Id.* This exhaustion requirement is a *mandatory claim-processing* rule, meaning that, "'[i]f properly invoked, [it] must be enforced . . . .'" *United States v. Sanford*, — F.3d —, 2021 WL 236622, at *3 (7th Cir. Jan. 25, 2021) (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 1843, 1849 (2019)). And

although the Government was not ordered to respond, the Court must still "conduct a preliminary review to determine whether the motion is . . . premature." SDIL Fourth Am. Admin. Order 265 (2020).

Bray alleges that he moved for compassionate release with the regional director of the Bureau of Prisons in Kansas City. (*See* Bray's Mot. for Compassionate Release at Ex. A). This is supported by record evidence showing that his motion was filed in September 2020—more than 30 days before seeking relief here. The Court will therefore consider Bray's administrative remedies exhausted.

### C. The § 3553(a) Factors

The Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Director of the Bureau of Prisons is in the best position to know which inmates are most vulnerable to infection and whether they still pose a public-safety risk. And since March 2020, BOP has released nearly 8,000 inmates that it has identified as "suitable for home confinement." *Coronavirus*, BOP (last visited Feb. 12, 2021).[2] So although not bound by any BOP determination, the Court "will give the Director's analysis substantial weight . . . ." *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

With that in mind, the § 3553(a) factors weigh against a sentence modification here. Bray's The mere existence of the COVID-19 pandemic is not an *extraordinary and compelling* reason justifying the release of every prisoner. Bray states, without support, that his health is worse now

---

[2] *Available at* https://www.bop.gov/coronavirus/.

that he already had the virus. But whether having had COVID-19 before makes someone more susceptible to it in the future is under significant debate. Any rate, a sentence modification is inappropriate here given Bray's recent and extensive criminal history. His assertion that he is a "nonviolent offender" is a half-truth. (Bray's Mot. for Compassionate Release at Ex. A). Indeed, he is incarcerated for unlawfully carrying a firearm after resisting arrest—not to mention escaping from jail and causing $12,000 in damage. Just three years before, he was found in his car with methamphetamine, a glass pipe, and ammunition. Contrary to his belief that he is "not a danger to the community," (*id.*), the Court disagrees. Rather, even given the COVID-19 pandemic, Bray's continued incarceration is necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to adequately deter Bray and others from committing further crimes, to provide drug treatment, and to protect the public.

### III.   CONCLUSION

The Court **DENIES** Defendant Justin M. Bray's Motion for Compassionate Release.

**IT IS SO ORDERED.**

**Dated: Friday, February 12, 2021**

<u>S/J. Phil Gilbert</u>
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**